COX, J.
Lin this medical malpractice case, plaintiff, Karla Breland (“Mrs. Breland”), appeals a judgment from the First Judicial District Court, Parish of Caddo, State of Louisiana, wherein the trial court sustained a peremptory exception of prescription in favor of the defendants, Willis Knighton Medical Center, Joseph Jones, M.D., and Lindsey Vierra, R.N. (“Defendants”). Mrs. Breland prays that the trial court be reversed and the case remanded for further proceedings. Defendants request that this Court affirm the decisions of the trial court sustaining their exception of prescription and denying Mrs. Breland’s request for leave to amend her petition. Additionally, Defendants request that this Court hold Mrs. Breland liable for the payment of all costs associated with these proceedings. For the following reasons, we respectfully reverse the judgment of the trial court and remand the case to allow Mrs. Breland the opportunity to amend her petition to include the discovery date of the alleged malpractice.

Facts

Ray David Breland (“Mr. Breland”), Mrs. Breland’s now-deceased husband, suffered from a medical condition that caused the ammonia level in his body to rise. Due to his condition, he was prescribed a minimum of 30cc of Lactulose to be given three times per day to control his ammonia level. The Lactulose also prevented complications associated with his condition, which included mental confusion, agitation, and, if left untreated, toxemia.
Mr. Breland began to suffer from liver complications and was diagnosed with a recurrence of his hernia. He was admitted to Willis Knighton North, and, on June 19, 2014, surgery was performed by Dr. Gazi Zibari. On June 27, 2014, Mr. Breland was discharged to his home. One | ¿month later, on July 27, 2014, he began to experience severe abdominal pain and was taken back to Willis Knighton North.
According to Mrs. Breland’s verified petition, she informed the emergency room nurse and the emergency room physician of Mr. Breland’s need for Lactulose. At that time, Mr. Breland was given only nausea and pain medication. When Mr. Breland was admitted to a hospital room, Mrs. Breland provided the staff with a full list of necessary medications required by Mr. Breland, which included Lactulose.
Upon arrival in his hospital room, Mr. Breland was exhibiting signs of confusion. Mrs. Breland informed the floor nurse that Mr. Breland needed to be given his required Lactulose. Mr. Breland continued to receive only nausea and pain medication. He became restless, and Mrs. Bre-land was advised she should not leave him unattended.
On July 28, 2014, Dr. Zibari was able to fix Mr. Breland’s hernia without surgery. Dr. Zibari informed Mrs. Breland that Mr. Breland could return home the next day. Mrs. Breland requested food and Lactu-lose from Mr. Breland’s on-duty nurse at the time, Lindsey Vierra (“Nurse Vier-ra”).[1] Mr. Breland received a liquid diet tray, but still no Lactulose.
Later that afternoon, Dr. Joseph Jones visited Mr. Breland’s room and Mrs. Bre-land again requested that Mr. Breland be given his Lactulose. Dr. Jones told Mrs. Breland that the Lactulose was on a list of medications they received. He also told her he would remind the nurses to give Mr. Breland the Lactulose. Dr. Jones then pushed the call button and told Nurse Vierra to |3be sure Mr. Breland received the Lactulose as required and as written on the ER admitting forms.
*726 That evening, Mrs. Breland again asked Nurse Vierra about the Lactulose and reminded her of Mr. Breland’s need for the medication. Nurse Vierra told Mrs. Bre-land that she knew Dr, Jones had instructed her to give the medication, but that he had not written an order to do so. Again, Mrs. Breland informed Nurse Vierra that Mr. Breland required the Lactulose. Nurse Vierra told Mrs. Breland that she would be sure his current on-duty nurse, Sha’Caron Hayes, was informed.
On July 28, 2014, Mrs. Breland was told it was okay to leave Mr. Breland at the hospital so she could attend work the next day. Before Mrs. Breland left the hospital, she spoke to Nurse Hayes who told her there was no order for the Lactulose. Mrs. Breland told Nurse Hayes how important the medication was for Mr. Breland and offered to call Dr. Jones or Dr. Zibari to ensure Mr. Breland’s well-being. Nurse Hayes assured Mrs. Breland she would call the doctors right away. Records indicate 30cc of Lactulose was ordered at 9:10 p.m. on July 28, 2014, and one-half dose (15cc) was given at 3:00 a.m. on July 29, 2014.
On July 29, 2014, Mrs. Breland attempted to call Mr. Breland while she was at work, but there was no answer. Mrs. Bre-land then called the nurses’ station, but his on-duty nurse was unavailable. After one hour, Mrs. Breland called again and requested that someone check on Mr. Breland. Nurse Vierra returned Mrs. Bre-land’s call and informed her that Mr. Bre-land was confused and refusing his Lactu-lose. Nurse Vierra told Mrs. Breland there was an option for him to be given the medication rectally. Mrs. Breland gave Nurse |4Vierra permission to do whatever was necessary to get the medication to Mr. Breland.
Nurse Vierra told Mrs. Breland it was okay for her to wait to come to the hospital on her lunch break at noon. However, Nurse Vierra called Mrs. Breland back to inform her that Mr. Breland had begun to experience respiratory distress and had been placed on a ventilator.
Mrs. Breland left work at 10:00 a.m. When she arrived at the hospital, she was informed that Mr. Breland was in a coma. Dr. Randy D. Bryn informed Mrs. Breland that he had “never seen ammonia levels as high as Mr. Breland’s.” At 11:00 a.m., Mr. Breland’s ammonia level was at 1,036 umol/L.[2] At this time, Mr. Breland was being given Lactulose rectally to bring down his ammonia level.
On July 30, 2014, Mr. Breland was suffering from nonstop seizures. Dr. Alexander, the head of the ICU, informed Mrs. Breland that every possible medication was being given to Mr. Breland but nothing was working. Mr. Breland was given a medication that would paralyze his muscles so his body would not seize, but the seizures continued to be active in his brain. On July 31, 2014, Mr. Breland passed away.
In. mid-fall 2014, approximately two months after Mr. Breland’s death, Mrs. Breland sought an attorney to request her husband’s medical records for review.[3] On May 29, 2016, Mrs. Breland was advised by her counsel of the alleged acts of negligence by Defendants. On July 29, 2015, Mrs. Breland | afiled suit. On August 14, 2015, she requested a medical review panel. Defendants filed an exception of prescription, which the trial court granted on *727 March 21, 2016. Mrs. Breland’s counsel requested leave to amend the petition, which the trial court denied.
The trial court believed that Mrs. Bre-land, a nurse, knew there would be a problem if the Lactulose was not administered to Mr. Breland and was therefore put on notice of her claim at that time. Additionally, the trial court stated that Mrs. Bre-land’s petition was very detailed, and the trial court did not see any amendment Mrs. Breland could make to her original petition that would overcome the defendant’s exception of prescription.
Mrs. Breland filed a devolutive appeal on April 21, 2016, appealing this judgment.

Law

Article 1161 of the Louisiana Code of Civil Procedure states, “A plaintiff may amend his petition without leave of court at any time before the answer thereto is served. Otherwise, the petition may be amended only by leave of court or by written consent of the adverse party.” Further expanding on this, Louisiana Code of Civil Procedure Article 1154 states the following:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. However, failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence [¿would prejudice him in maintaining his action of defense on the merits.
The most pertinent article pertaining to the matter at hand, however, is Louisiana Code of Civil Procedure Article 934, which provides:
When the grounds of the objection pleaded by the peremptory exception may be removed' by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action shall be dismissed.
Louisiana Code of Civil Procedure Article 934' has been liberally applied by courts. In Whitnell v. Menville, 540 So.2d 304, 304 (La. 1989), the Louisiana Supreme Court noted that the courts of appeal have held that “where the plaintiff has raised allegations in argument which might be sufficient to overcome a peremptory exception of prescription, he should be allowed time to amend his petition to assert such allegations, even though the claim asserted in the original petition is prescribed on its face.”
In Whitnell, supra, the district court sustained the defendant’s peremptory exception of prescription in a-legal malpractice case. The court of appeal affirmed the judgment because the plaintiffs claim had prescribed on its face. However, the Louisiana Supreme Court reversed the district court and allowed the plaintiff to amend his petition to show that prescription had been interrupted. The Louisiana Supreme Court noted that it is not necessary for a court to allow a plaintiff time to amend if he cannot point out any possible grounds that are. sufficient to overcome the exception. Id. at 309. However, the Court went on to state that “a court may allow time to amend if the new allegations raise the *728 possibility that the claim is not prescribed, even if the ultimate outcome of the prescription issue, once the petition is amended, |7is uncertain.” Id. The Court found that an opportunity to amend should be allowed unless it can be determined, in advance of the amendment, that the new allegations could have no effect on the prescription issue. Id.

Discussion

After reviewing the case, we respectfully reverse the trial court’s decision to grant Defendant’s exception of prescription and remand this case to allow Mrs. Breland the opportunity to amend her petition to include the discovery date of the alleged malpractice. Louisiana Code of Civil Procedure Article 934 has been liberally applied by courts to allow for the amendment of petitions in the interest of sustaining justice and for various policy reasons.
The inclusion of a discovery date in Mrs. Breland’s original petition may allow her to overcome the exception of prescription. Mrs. Breland’s discovery date, as stated in her memorandum in opposition to the exception of prescription, is May 29, 2015. She argues that this discovery date is well within the prescriptive period for medical malpractice claims, as the date was less than three months from the time she filed her medical malpractice complaint on August 14, 2015, and .within three years of the alleged negligent acts by the defendants.
Defendants have not raised any arguments to show that allowing the amendment would prejudice them in any way. Rather, their main argument against allowing Mrs. Breland to amend is that it would not remove the grounds for the exception of prescription. Defendants argue that the only way Mrs. Breland could amend her petition to overcome the exception would be to change her allegations. However, this is incoiTect as the discovery date was never mentioned in Mrs. Bre-land’s original petition. Allowing a discovery |sdate would not change any of the allegations or claims Mrs. Breland made in her original petition against the defendants.
It is clear that Mrs. Breland’s amendment to include a discovery date in her original petition would raise some possibility that the claim had not prescribed. The opportunity for Mrs. Breland to amend should thus be allowed since we have determined, in advance of the amendment, that this new information might have an effect on the exception of prescription. The amendment of the petition will give Mrs. Breland the opportunity to proceed with her case, and Defendants will maintain the opportunity to argue their case.
Additionally, the language of Article 934 of the Louisiana Code of Civil Procedure uses the mandatory word “shall.” Therefore, it is clear that, because Mrs. Bre-land’s amendment may remove the grounds for the defendant’s peremptory exception, the court is required to allow her the opportunity to amend her petition.

Conclusion

For the foregoing reasons, the trial court’s judgment granting the defendant’s exception of prescription is reversed. We remand the case to the trial court to allow Mrs. Breland the opportunity to amend her original petition within the time delays set by the trial court. Costs of this appeal are assessed to the defendants, Willis Knighton Medical Center, Joseph Jones, M.D., and Lindsey Vierra, R.N.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, LOLLEY, STONE and COX, JJ.
Rehearing denied.

. Incorrectly named in the medical malpractice complaint as Lindsey Viena, R.N.

. According to Mrs. Breland’s verified petition, a normal ammonia level is <33 umol/L.

. In their brief, Defendants state this is the first time Mrs, Breland has argued that she met with counsel “approximately 60 days after the acts.”